# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON | No. 56582-0-II |
| Respondent, | |
| v. | |
| ROBERT JAMES FINANDERS, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, C.J.— Police found Robert Finanders in possession of a stolen travel trailer. The State charged him with first degree possession of stolen property. Prior to trial, the trial court ruled that the State could elicit testimony showing Finanders had both access to the trailer prior to its theft and the opportunity to steal it. However, the court prohibited the State from eliciting testimony that Finanders had, as a matter of settled fact, committed the theft. Despite the trial court's ruling, the prosecutor elicited testimony stating that Finanders stole the trailer himself. The trial court sustained objections and directed the jury not to consider this testimony. The jury convicted Finanders.

Finanders appeals, arguing that the prosecutor committed misconduct by eliciting testimony prohibited by the pretrial order, depriving Finanders of his right to a fair trial. We affirm Finanders's conviction.

FACTS

I. BACKGROUND

Dean Anderson rented a storage unit in Gresham, Oregon during the fall of 2020. Anderson shared his unit with Finanders and gave Finanders his access code to get into the facility. In September 2020, a travel trailer was reported stolen from the facility. Officer Nathan Still investigated the theft. Still reviewed surveillance video showing that the trailer was stolen by two individuals driving a black pickup truck. Surveillance video captured two days before the theft also showed a similar pickup truck accessing Anderson's storage unit. The storage facility manager determined that Anderson's access code was the one used to get into the facility when the trailer was stolen.

Gresham police notified Skamania County police that the stolen trailer might be located in the area. In November 2020, a Skamania County officer noticed a trailer matching the description of the stolen trailer in a disbursed camp. Police knocked on the trailer door and found Finanders's girlfriend's daughter. While the police were talking with the daughter, Finanders drove up. The officer told Finanders that the trailer had been reported stolen. Finanders said that he had purchased the trailer and had paperwork documenting the purchase in Portland, but couldn't remember who he bought it from. The daughter later explained that she had been living in the trailer with Finanders and her mother for at least a month. The State charged Finanders with first degree possession of stolen property.

II. TRIAL

A.      Pretrial Motion

To convict someone of first degree possession of stolen property, the State must prove that the defendant knew the property was stolen. RCW 9A.56.140(1), .150(1). Prior to trial, the State moved to offer evidence under ER 404(b) suggesting that Finanders himself had stolen the trailer, in addition to later possessing it, to show he had knowledge the trailer was stolen. This testimony was going to be offered, in part, through testimony from Anderson. Finanders simultaneously sought to exclude evidence suggesting that Finanders stole the trailer from the Oregon storage facility, arguing that it was more prejudicial than probative under ER 403 and it was not admissible under ER 404(b).

The trial court conducted an ER 404(b) analysis and ultimately ruled the State could elicit testimony showing Finanders "had the opportunity to commit this theft and had access to [the trailer]." Verbatim Rep. of Proc. (VRP) at 90. The trial court also allowed testimony that Finanders was later found in possession of the trailer after it was reported stolen. But the court concluded, "[S]tating that Mr. Finanders committed the theft is . . . a step too far." *Id.* The trial court excluded "the final conclusion that Mr. Finanders actually committed the theft without any kind of actual evidence of somebody saying they observed him commit that theft." VRP. at 91.

B.      Trial

At trial, the State called Anderson as its first witness. When asked why his relationship with the storage facility ended, Anderson responded that the facility called him and told him he was being evicted. He continued, "I had no idea until I got there and they told me that . . ." VRP at 243. Defense counsel interrupted, objecting to hearsay. The trial court overruled the objection,

and told Anderson, "Go ahead and answer." VRP at 244. Anderson then stated, "They had told me that Mr. Finanders had taken a trailer from the property." *Id.* The trial court sustained the objection and instructed the jury to "[d]isregard the statement," but allowed Anderson to "explain why he was getting evicted." *Id.*

The prosecutor then asked, "[W]hat was the reason that you were being evicted?" *Id.* When Anderson started with, "Because Mr.," the prosecutor interrupted and rephrased to ask whether, "a theft had occurred at that location?" *Id.* Anderson stated, "Yes, they told me that . . . a trailer [had been] removed by Robert Finanders." *Id.* Defense counsel objected a third time and the trial court sustained the objection, then instructed the jury to "[d]isregard the last statement about . . . who may have allegedly done that." *Id.* Defense counsel did not move for a mistrial.

Anderson otherwise testified that he shared the storage unit with Finanders and that Finanders was the only person with whom he shared his entry code for the storage facility. Next, the investigating officer testified, describing what he saw on the facility's surveillance videos captured from the night of the theft, as well as two days before. The officer stated that the truck used to steal the trailer appeared to be the "same Ford pickup truck" used to previously access Anderson's unit. VRP at 252.

The trial court admitted the surveillance video and the jury watched the video of the theft while the officer explained what happened. The owner of the storage facility also testified. He confirmed that the truck used to steal the trailer appeared to be the same truck that he had personally seen access Anderson's unit, explaining that the shape of the truck, and the taillights "just made it stand out." VRP at 272.

C.    Jury Instructions and Closing Argument

The trial court's instructions to the jury included the pattern instruction to not consider evidence that the trial court had ruled was inadmissible or evidence the court told the jury to disregard. *See* 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 1.02 (5th ed. 2021). The trial court also provided a to convict instruction that required the jury to find beyond a reasonable doubt that Finanders "acted with knowledge that the property had been stolen." Clerk's Papers (CP) at 63. With regard to that element, the trial court instructed the jury that "[c]ertain evidence has been admitted in this case for only a limited purpose. This evidence consists of all evidence concerning events that may have occurred in Gresham, Oregon and may be considered by you only to the extent that you find it relevant to the issue of knowledge." VRP at 359.

During closing argument, the parties agreed that the only contested issue was whether Finanders knew the trailer was stolen. However, the prosecutor instructed the jury that the State had the burden to prove all the elements of first degree possession of stolen property. When discussing whether the defendant knew the trailer was stolen, or the "crux of the matter," the prosecutor directed the jury to the instruction about evidence that was admitted for a limited purpose. VRP at 369. The prosecutor reminded the jury to consider evidence of the theft "only to the extent that you find it relevant to the issue of knowledge," an element of first degree possession of stolen property. VRP at 372.

The prosecutor then listed the evidence from Gresham, including Anderson's testimony that he had allowed Finanders to use his unit and access code, the storage manager's testimony that a similar truck used to commit the theft had accessed Anderson's unit a few days earlier, and

the jury's own observations from watching the surveillance video of the theft. The prosecutor argued that, based on the evidence, Finanders was "intimately tied to the initial theft of the trailer and therefore had clear knowledge that the trailer was stolen when he had it in here in Skamania County." VRP at 374. The prosecutor did not reference Anderson's testimony that the facility blamed Finanders for stealing the trailer. Finanders made no objections during the State's closing arguments.

The jury convicted Finanders of first degree possession of stolen property. Finanders appeals.

ANALYSIS

Finanders argues that prosecutorial misconduct deprived him of his constitutional right to a fair trial. Finanders contends that the prosecutor committed misconduct by not effectively conveying the court's pretrial ruling to Anderson before he testified, repeatedly asking questions targeting this prohibited evidence, and then capitalizing on the improper testimony in closing arguments. Finanders argues that because the improper statements were centered on the one contested issue, whether he knew the trailer was stolen, the misconduct had a substantial likelihood of affecting the jury's verdict.

The State acknowledges that Anderson's testimony violated the pretrial order but argues that the testimony had no substantial likelihood of affecting the jury's decision. Even assuming without deciding that the prosecutor failed to adequately convey the trial court's pretrial ruling to Anderson before he testified, we agree with the State that Finanders cannot show sufficient prejudice to warrant reversal.

A.     Prosecutorial Misconduct

The right to a fair trial in a criminal case is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and by article I, section 22 of the Washington Constitution. *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 703, 286 P.3d 673 (2012). Where there has been prosecutorial misconduct in obtaining a conviction, the criminal defendant may have been deprived of the constitutional right to a fair trial. *Id*. at 703-04. A defendant alleging prosecutorial misconduct has the burden of proving that the conduct was both improper and prejudicial. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). Where, as here, the defendant objected at trial, the defendant must show that the prosecutor's improper conduct resulted in prejudice that had a substantial likelihood of affecting the jury's verdict. *Id.* at 760*.* In analyzing prejudice, we do not look at the prosecutor's conduct in isolation, but rather in the "context of the total argument, the issues in the case, the evidence, and the instructions given to the jury." *State v. Warren*, 165 Wn.2d 17, 28, 195 P.3d 940 (2008)*.* A correct and thorough curative instruction may cure prejudice against the defendant as we presume that juries follow the trial court's instructions. *Id.*

Finanders relies on *State v. Taylor*, 18 Wn. App. 2d 568, 490 P.3d 263 (2021), to argue that Anderson's testimony requires reversal. In *Taylor*, Division One considered whether the trial court abused its discretion by denying a defendant's motion for mistrial after an expert witness violated three pretrial orders in limine. The expert witness violated the pretrial orders by referencing Taylor's criminal history, stating that Taylor had a "lengthy history" of substance abuse, and mentioning that Taylor requested an attorney when he was arrested. 18 Wn. App. 2d at 579. The trial court issued curative instructions in response to the testimony about Taylor's criminal history

and his request for an attorney, but not in response to the testimony about his history of substance abuse. *Id.* at 582. After the comment about Taylor's history of substance abuse, the trial court decided not to give a curative instruction because it "may have called more attention to the statement such that it would have countered the desired curative effect." *Id.* at 583.

Division One reversed Taylor's conviction, concluding that "[i]n isolation, each of these irregularities likely could have been resolved or mitigated with curative instructions, but the misstatements here accumulated quickly over the course of direct examination of a single key witness." *Id.*

B.      Analyzing Prejudice in this Case

Unlike in *Taylor*, we must apply the prejudice standard applicable in cases involving claims of prosecutorial misconduct because here, defense counsel objected but there was no motion for mistrial. Even if we assume the prosecutor failed to adequately discuss the trial court's pretrial order with Anderson, there was not a substantial likelihood that Anderson's two improper statements affected the jury's verdict. The trial court's curative instructions and the weight of the other evidence sufficiently mitigated any prejudice.

The trial court sustained objections to Anderson's testimony that Finanders stole the trailer, and orally instructed the jury to disregard the statements each time. Specifically, the trial court twice instructed the jury to disregard Anderson's reference to the storage facility's accusation that Finanders, himself, had stolen the trailer. This is unlike *Taylor*, where the trial court decided not to instruct the jury to disregard a witness's statement regarding the defendant's "lengthy history" of substance abuse. 18 Wn. App. 2d at 582. Here, in addition to the immediate oral instructions, the trial court gave the jurors a written instruction directing them to avoid considering evidence

that the trial court had told them to disregard. The trial court also instructed the jurors to consider evidence related to events in Gresham "only to the extent that you find it relevant to the issue of knowledge." CP at 61. We presume the jury followed the court's oral and written instructions. *Warren*, 165 Wn.2d at 28.

We recognize that an instruction to disregard will not always cure the prejudice from improper testimony. However, the capacity of Anderson's improper testimony to cause prejudice was slight when compared with the other properly admitted circumstantial evidence that Finanders knew the trailer was stolen. Here, in its pretrial order, the trial court ruled that the prosecutor could use the evidence about the theft of the trailer to argue that Finanders "had the opportunity to commit this theft and had access to [the trailer]." VRP at 90. The trial court only excluded "the final conclusion that Mr. Finanders actually committed the theft." VRP at 91.

The State presented evidence that Finanders had an access code to the facility, that same access code was used to enter the facility when the trailer was stolen, the truck used to steal the trailer was seen at the storage unit that Finanders shared with Anderson, Finanders was found living in the stolen trailer, and Finanders did not have paperwork to prove his assertion that he had bought it legally. Due to the extent of the properly admitted evidence showing knowledge and the immediate and correct curative instructions, Finanders cannot show that Anderson's improper testimony, stating that the facility manager had accused Finanders of the theft, had a substantial likelihood of affecting the jury's verdict.

Finanders also argues that although the prosecutor's closing arguments may have been permissible, they exacerbated the prejudicial impact of Anderson's testimony by focusing on the defendant's responsibility for the theft. During closing argument, prosecutors have wide latitude

9

to argue reasonable inferences from the evidence. *Glasmann*, 175 Wn.2d at 704. In closing argument, the prosecutor listed all of the evidence from the theft in Gresham before arguing that "it's clear when you . . . piece everything together, that the defendant is intimately tied to the initial theft of the trailer and therefore had clear knowledge that the trailer was stolen." VRP at 374. The prosecutor never referenced Anderson's improper testimony, but instructed the jury to consider the evidence of the theft "only to the extent that you find it relevant to the issue of knowledge." VRP at 372. Given the strength of the State's evidence and the trial court's instructions to the jury, we conclude there is no substantial likelihood that Anderson's improper testimony, coupled with the prosecutor's closing arguments, prejudiced Finanders. Accordingly, we hold that Finanders's claim of prosecutorial misconduct fails.

## CONCLUSION

We affirm Finanders's conviction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, C.J.

We concur:

Cruser, A.C.J.

Che, J.